IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMANUEL NKWENTI-ZAMCHO, | : | |
| | : | |
| | : | Civil No. 4:05-CV-2200 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Judge McClure) |
| PENNSYLVANIA COLLEGE OF TECHNOLOGY, | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

March 3, 2006

**BACKGROUND:**

On October 27, 2005, plaintiff Emmanuel Nkwenti-Zamcho filed a four-count

complaint in the Middle District of Pennsylvania against his employer Pennsylvania

College of Technology ("Penn College").  Counts I and III of the complaint allege

hostile work environment claims based on national origin in violation of federal and

state law.  Counts II and IV of the complaint allege claims for racial discrimination

under federal and state law.

On December 27, 2005, defendant filed a motion to dismiss the complaint

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief

can be granted.  The matter is now ripe for our review.

For the following reasons we will grant defendant's motion to dismiss in part.  Plaintiff's requests for punitive damages in connection with his PHRA claims are dismissed.

## DISCUSSION:

### I.  Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must view all allegations in the complaint as true and construe all inferences in the light most favorable to plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In ruling on a motion to dismiss the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  Kost, 1 F.3d at 183.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A complaint should be dismissed only if the court, from evaluating the allegations in the complaint, is certain that under any set of facts relief cannot be granted.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Markowitz v. Northeast Land, Co., 906 F.2d 100, 103 (3d Cir. 1994).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." <u>Id.</u> at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." <u>Id.</u> at 327.

## II.  Statement of Relevant Facts

The following facts are taken from the plaintiff's complaint, with all inferences taken in a light most favorable to plaintiff. Plaintiff Emmanuel Nkwenti-Zamcho is currently employed by defendant Penn College as an Assistant Professor of International Business and Business Ethics. Nkwenti-Zamcho has been continuously employed by defendant since August 1997. Plaintiff is a black male and a naturalized citizen of the United States. Nkwenti-Zamcho was born in Cameroon, West Africa and speaks English with a British accent due to his national origin.

On September 20, 2002, Edward Henninger, Dean of the School of Business, sent plaintiff an e-mail that chastised him about the teaching of a Customer Relations course that had been taught by plaintiff and others as a

Consumer Behavior course without a formal curriculum name change.  In a meeting

with the dean plaintiff explained that the change in the content of the course had

been done prior to the dean's employment with the approval of the department.

The dean was infuriated with plaintiff and told his colleagues that he would teach

Nkwenti-Zamcho a lesson for teaching the class.  Plaintiff asserts that thereafter the

dean abused his authority and engaged in a pattern of harassment.

At the beginning of the 2002 fall semester plaintiff decided to prepare himself

for promotion to Associate Professor.  This required that he obtain many more

recent student evaluations.  In order to obtain more student evaluations plaintiff

consulted with the dean.  The dean agreed to have the student evaluations done and

further asked if he could also observe the plaintiff's classes.  Plaintiff agreed and

the dean attended at least one class in the Fall and made suggestions which plaintiff

later incorporated into his teaching.

In January 2003 plaintiff submitted his application for promotion.  Shortly

thereafter, plaintiff met with the dean.  The dean informed plaintiff that he would be

scheduling visits to the plaintiff's classes.  In February 2003 the dean attended two

of plaintiff's classes.  After observing plaintiff teach affirmative action in a Business

Ethics class the dean informed plaintiff that he disagreed with his approach to the

subject.  The dean said that plaintiff should have approached the material as a moral

issue and not as a matter of fact or law.  The dean scheduled another observation of plaintiff's teaching in March 2003.  Following this class, the dean's review criticized plaintiff in several ways including the diction and intonation of his speech. In April 2003 Nkwenti-Zamcho learned that he had been unsuccessful in his application for promotion and that one of the main reasons given was a lack of endorsement from the dean.  On May 22, 2003, after more observations by the dean and separately by Associate Dean Marcinkiewicz, plaintiff met with the dean, who again discussed Plaintiff's diction and intonation of his speech and how plaintiff taught affirmative action.

Only after plaintiff complained to his union in the fall of 2003 about the dean's plan to evaluate more of his classes in 2003-2004 school year, did the classroom visits by the dean abate for a short period of time.  However, student evaluations continued for all of his classes.  Plaintiff's scheduled Business Ethics class for the 2004 spring semester was reassigned by the dean for purposes of diversity.  But by the end of September 2003, plaintiff was assigned to teach another section of Business Ethics for the following spring's semester.  Student evaluations continued throughout the 2003-2004 school year.

In about May 2004 plaintiff submitted his claim of discrimination to the

EEOC.[1]   On August 3, 2005, the EEOC issued a dismissal and notice of rights to plaintiff stating that it could not conclude, based upon the information obtained from its investigation that there were violations of the civil rights statutes and provided plaintiff with ninety days to initiate a lawsuit.  (Rec. Doc. No. 1, Ex. A.)

In July 2004 plaintiff was advised that the dean was recommending that plaintiff be placed on an instructional development plan.  After a formal plan was proposed and plaintiff initially challenged its implementation, plaintiff ultimately acquiesced to the development plan.  In each of the 2004 fall and 2005 spring semesters, the dean visited three of plaintiff's classes.  Also as part of the development plan plaintiff attended a professional development seminar in May 2005.  During the 2005 fall semester students were again asked to evaluate four of plaintiff's five classes.  No other professor with permanent status employed by the defendant has been subjected to the number or frequency of evaluations, whether by the dean or students, as plaintiff during the time period spanning the 2001 spring semester through the 2005 fall semester.

### III.  Nkwenti-Zamcho's Title VII & PHRA Claims

At the outset, we note that PHRA claims are interpreted coextensively with

---

[1]Defendant identifies the date as on or about July 21, 2004 in its filings.

Title VII claims. <u>Douris v. Genaurdi's Family Markets, Inc.</u>, 132 F. A'ppx 425, 425

n.1 (3d Cir. 2005) (citing <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 105 (3d Cir. 1996));

<u>Dennison v. Pennsylvania Dept. Of Corrections</u>, 268 F. Supp. 2d. 387, 405 n.16

(M.D. Pa. 2003.) (Munley, J.).  Therefore, our analysis under Title VII applies with

equal force to Nkwenti-Zamcho's claims under the PHRA.[2]

## A.  The Correct Standard of Review

Defendant directs the court to the <u>McDonnell Douglas</u> <u>evidentiary</u> standard,

albeit not by name, for establishing a <u>prima</u> <u>facie</u> case of employment

discrimination.  (Def.'s Br. Supp. Mot. Dismiss, Rec. Doc. No. 9, at 4-5.)  After

introducing that standard defendant argues that plaintiff has failed to establish

several elements of the <u>prima</u> <u>facie</u> case, namely, an adverse employment action and

a discriminatory action or inference.  (<u>Id.</u> at 5-7.)  Defendant also asserts that

plaintiff has failed to state a cause of action for employment discrimination under

the hostile work environment theory by citing to the elements of the <u>prima</u> <u>facie</u>

case of the hostile work environment.  (<u>Id.</u> at 7-8.)  Plaintiff's brief in opposition

addresses each of defendant's arguments in turn.

Neither party has briefed the correct standard by which this court must

---

[2]Except for our discussion of punitive damages.

review defendant's motion to dismiss, although plaintiff's suggestion that he is

entitled to discovery before establishing a prima facie case is headed in the right

direction.  In 2002, a unanimous United States Supreme Court explicitly stated that

the McDonnell Douglas prima facie case "is an evidentiary standard, and not a

pleading requirement."  Sweirkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002);

Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004); Gavura v. Pa.

State House of Representatives, 55 F. App'x 60, 63-65 (3d Cir. 2002); see also

Evancho v. Fisher, 423 F.3d 347, 352-53 (3d Cir. 2005) (quoting Sweirkiewicz);

James v. Virgin IslandsWater & Power Authority, 119 F. App'x 397, 398-400 (3d

Cir. 2005) (discussing District Court's alleged application of the wrong standard in

dismissing Title VII case).  Defendant's unsupported argument to the contrary,

highlighted in its reply brief at page 9, is without merit in light of the Supreme

Court's explicit holding in Sweirkiewicz.

     In Sweirkiewicz a unanimous Supreme Court rejected the Second Circuit's

heightened pleading requirement for employment discrimination cases that required

a plaintiff to plead a prima facie case of discrimination in order to survive a motion

to dismiss.  The Court noted that a heightened pleading requirement for an

employment discrimination plaintiff conflicts with Fed. R. Civ. P. 8(a)(2).

Sweirkiewicz, 534 U.S. at 512.  Under that rule all that is required is a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a)(2).  The plaintiff's "statement must simply 'give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests.'"

Sweirkiewicz, 534 U.S. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Even before Sweirkiewicz, this was what was required of employment

discrimination plaintiffs in the Third Circuit.  Weston v. Pennsylvania, 251 F.3d

420, 429-430 (3d Cir. 2001).

    The parties' arguments about the prima facie case are premature.  The

briefed matters would be relevant if this court were reviewing the case at the

summary judgment stage, but we are not.  All that is required of plaintiff at this

stage is the straightforward requirements of Fed. R. Civ. P. 8(a).  Plaintiff has

provided a short and plain statement of the claim showing that he is entitled to

relief.  He has asserted that he was discriminated against on the basis of his race

and national origin.  If he is successful with his hostile work environment claim he

will not need to adduce an adverse employment action.

## IV.  Punitive Damages

    Defendant also asserts that plaintiff has failed to allege conduct on the part of

the defendant that is outrageous or especially egregious and that therefore his claim

for punitive damages must be dismissed.  Defendant also asserts that plaintiff's

claim for punitive damages under the PHRA is barred as a matter of law.

At this stage we will not preclude plaintiff from pursuing punitive damages for his claims under Title VII.  Defendant is correct, however, that punitive damages are not available under the PHRA.  Hoy v. Angelone, 720 A.2d 745, 751 (Pa. 1998); see also Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 570 n.3 (3d Cir. 2002) (citations omitted); Cortes v. R.I. Enterprises, Inc., 95 F. Supp. 2d 255, 260 (M.D. Pa. 2000) (Caputo, J.) (citing Hoy). Therefore, plaintiff's demand for punitive damages as they relate to his claims under the PHRA must be dismissed as a matter of law.


**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's motion to dismiss is granted in part.  (Rec. Doc. No. 8.)

2.      Plaintiff's request for punitive damages in connection with his PHRA claims (Counts III and IV), are dismissed as a matter of law.

3.      Defendant's answer to all remaining claims shall be due on or before March 20, 2006.


                                              s/ James F. McClure, Jr.
                                              James F. McClure, Jr.
                                              United States District Judge